This is 4090177, The People v. Jamie Schabowski. We have for the appellant, Charles Mansfield, and for the appellee, David Ryan. Mr. Mansfield. Thank you, Your Honor. I may have pleased the court counsel. Let me begin with a message for distinguished jurists to my left. This is the third time in four successive appearances before this court that I have had the opportunity to say that I wish the state's attorney, or in this case the assistant state's attorney, had done something differently. And you, Justice Steinman, have been here for all three. This is the way that the ball bounces, or whatever. But here, quite seriously, I really do wish that the assistant state's attorney, Nancy Livingston, had asserted the law of the case doctrine. Certainly, if not in a pretrial motion, then in her argument to the court. She didn't. And I think this whole matter would have been much simplified had she actually insisted that there be an adequate foundation established for the DVD and that the court go through the formality of admitting it or denying it in evidence. She didn't. So, obviously, part of my objective today is to demonstrate that while forfeiture most definitely applies to the state, it is in the interest of justice and maintaining a sound, uniform body of precedent that the state's forfeiture should be excused. And, importantly, this, too, is the objective of law of the case doctrine. Now, without intending to abandon any of the arguments raised in the state's brief, let me focus on three. Law of the case, probable cause to arrest, and the suppression court's factual and credibility findings. Now, at the close of the suppression hearing, the court, Judge Borberle presiding, stated, well, it's always interesting to view the videos. It's a fascinating subject of how different people can look at the same thing and see different things. And he certainly was correct. And it is this statement, along with the antithetical, irreconcilable results of the two hearings, the recession hearing and the suppression hearing, that well demonstrate why law of the case should apply and should be applied here. Now, as to the evidence presented regarding probable cause at the suppression hearing, Judge Borberle stated, I didn't see the vehicle ever hit the curb or brush it or anything like that. He said he did not see the vehicle crossing the dividing line, nor did he see defendant stumble as she got out of the car. However, just two and a half months earlier, after receiving essentially the same testimony from the same two witnesses and watching what surely is the same DVD, the court at the recession hearing, Judge Stipp presiding, said, Having reviewed the video, the court notes that it personally observed defendant's vehicle cross over the so-called white fog line at the right side, at least on one occasion. I didn't see a white fog line. My recollection is that I saw the semblance of one, Your Honor. There appears to be some kind of a line, but it doesn't appear to be, it looks more like an addition was made to the road. It well could be. My recollection is that there was at least some veering to the right that if there were a well-defined fog line there, it would have been at least brushed or crossed over. Now, I certainly agree with the suppression hearing judge that I didn't see a curb get hit. Of course, I didn't see very many curbs along that stretch of highway either. I didn't see dust or puddles splash up, but I do recall seeing myself anyway, for whatever that's worth, two or three times the vehicle veered over what appeared to be a rather old fog line or would be the location of the fog line. But I think that is only the beginning of the story. That's not the essence of the story. Because, again, going back to the recession hearing, the judge said, but on three and I thought four occasions, I saw her car go over the center dividing line of the highway and then the two double lines as it approached the left turn area. This would be sufficient cause for the officer to make a stop. He continued. I'm sorry. Is crossing the fog line a violation? Yes, it is. It's not stated that way, and yes, it is because it's not driving as nearly as practical within the lane. Are there any cases on that? There used to be cases that said no. You asked me this six months ago, and I still haven't found any. Either I haven't remembered to look. Yes, you're supposed to stay as nearly as practical within your own lane, but I don't believe it's a violation to cross the fog line. It may well not be. I don't know. But I know that I think crossing over the fog line is not staying within, and perhaps this is shorthand nomenclature that police officers use to basically just shorten the description for the benefit of the court. And if not for the benefit of the court, certainly for their own benefit. Thank you. Having made the stop, the judge then, addressing events at the stop, found that the strong order the officer detected in observing the defendant leave the vehicle with some slight difficulty. She had to lean on the side of her car when walking back. This is enough to amount to probable cause. Now, on this last point, Cooper Kotcher testified at the suppression hearing that when the defendant stepped from her car, she stumbled. Now, we can all say, well, do you mean at the precise second she stepped from the car, or upon stepping from the car, or after she stepped out of the car? But he then testified that the defendant kind of went to the right before she came to the front of my squad car. And he did identify this event on the DVD during cross-examination. That event, by my reckoning, occurs at 1254 through 1256 on the DVD. Now, the recession judge, recision judge, I'm sorry, saw it. The suppression judge did not. Now, clearly, Judge Stipp and Judge Orberly cannot both be correct. They cannot both be correct in their factual conclusions or in their legal conclusions. The defendant had the opportunity to seek reconsideration and maybe appellate review of Judge Stipp's decision. She did neither. Thus, until a higher court ruled otherwise, Judge Stipp's findings of fact and conclusions of law established the law of the case. No coordinate judge in any further proceedings in this cause could rule otherwise on the issue of probable cause, on the issue of probable cause, at least not without other substantially different evidence being presented or a finding that Judge Stipp's decision was clearly erroneous for a higher court changing the law. Well, aren't these two different causes of action? One's a civil proceeding, one's a criminal proceeding? I believe they're both. The recision is conducted according to the rules of civil procedure. It raises the same issue. I'm going to get around to saying that, no, I think they're the same, but it raises the same issue phrased slightly differently, whether there was grounds to believe, whether there was probable cause to arrest. Now, in some recision proceedings, they're much less formal than occurred in this one. The driver is not guaranteed the right to counsel, which would say to me it is civil, if you ask. The adjudication can be based on the officer's sworn report. Here, however, the driver was represented by counsel, I think very competent counsel. There were two witnesses that testified. There was examination and cross-examination of both witnesses. The testimony, in its evidentiary aspects at least, was essentially the same at the two hearings, and as best I can tell, the same DVD was shown. The problem we have here is that we have a ripe, red delicious apple and a ripe, red delicious apple, except one of them is green. One of them is adjudicated green. It can't be. It diminishes the judicial system if that happens. And I'm afraid I have wandered far afield. Well, let me try to bring you back then. Yes, thank you, Your Honor. So your position is that if someone files petition to rescind his statutory summary suspension and loses because a probable cause finding is made under the statutory summary suspension statute, that that criminal defendant is thereby foreclosed from filing a motion to quash the arrest for failure to have probable cause? No. No, I am not going that far. I am saying that where that happens and the circumstances negate, I believe it was the Illinois Supreme Court's policy considerations, then, yes, law of the case applies. But let's not forget, law of the case applies only, you know, can be chomped out the side window when there's a change in facts, there's a change in evidence. And I think the change in evidentiary procedure that commonly occurs from a decision hearing to a suppression hearing would preclude applying law of the case. Here, the facts of the two proceedings, how they were conducted, the thorough examination, the suppression hearing was essentially a repeat of the rescission hearing. The only difference being the objective of the rescission hearing was return of driving privileges or reinstatement of driving privileges. And at the suppression hearing, it was obviously to suppress the .190 blood alcohol content from an analysis conducted from a breath sample taken some, what, two hours later. So she did blow at the police station? I'm sorry? She did blow at the police station? Yes. A .19. Yeah. .91? My recollection is .190. It's, I wrote it somewhere in my brief, I'm sorry. I was just curious about the PBT test. They're not admissible still in evidence in anything other than the suppression hearing? They are not admissible in a DUI trial. The PBT is not admissible in the DUI trial on the question of guilt or innocence. The PBT is admissible at the suppression hearing on the basis for whether the officer had probable cause to arrest. But they were not admitted here for lack of foundation, or it was not admitted here? We don't know why it was not admitted. Well, we do know why. Because defense counsel successfully objected during the suppression hearing when the officer was about to state it's a .149. So has the PBT ever been submitted to a fry test? Has it ever been? Submitted to a fry test hearing? Good heavens. I don't know. I just don't know much about it. I don't know. Well, I know very little about them. I know that this court, over the last few years, has found that PBT tests were admissible on the issue of probable cause. And one would suggest that perhaps by analogy for hearsay, it's state of mind. What's a reasonable officer's state of mind upon seeing a PBT test state .149? Now, they are. As far as I know, they are not. I don't believe they have ever been held admissible on the issue of guilt at a DUI. They have been held admissible under standard foundational procedures. For example, on the question of whether a minor consumed alcohol. Now, here, applying the law of the case would not be an academic exercise or contrary to the manifest way of the evidence. Judge Stiff's findings of fact and conclusions of law at the precision hearing are fully supported by the record from the suppression hearing. And I see I have already come nearly to the end. Let me suggest that there is substantial evidence from Kotcher's testimony in part describing the DVD and from the DVD itself. For example, he testified that during the instructional part of the heel-to-toe walk-and-turn test, the defendant could not stand with her right foot in front of her left foot, heel-to-toe, hands touching her side as he told her to do. But we can't see her feet on the DVD. She made reference to having on heels. What kind of heels did she have on? My recollection is that they were perhaps an inch or so. What the DVD does show from 1616 through 1819 is that the defendant was unsteady and tilted while Kotcher instructed her on and demonstrated the test. The walk-and-turn test. Now, Kotcher also testified the defendant stepped off the line on the way up and again on the way back. The DVD at 1824 through 1843 appears to show these missteps in terms of her body movement and swaying, although the defendant's feet, in my view, are visible only when she turns around, which was at 1833-1834. The next test Kotcher asked the defendant to perform was the one-legged stand. Now, let me shorten this by saying that the DVD... Hi. I'll stop. Okay. Thank you, Your Honor. Mr. Wright. I'd like to first address the waiver argument as it relates to the law of the case. Because, to me, the state's argument that the court should overlook its waiver is inconsistent. Do you have any idea? I don't know that he was short... he was irritated with her. I think he was irritated with the officer, whom he had to correct on at least two occasions, because the officer refused to comply with his instructions. Now, he did tell... he had viewed that video, unfortunately, several times, because I will take credit for being technically incompetent. I couldn't... I kept pressing the wrong button, and instead of going to the spot in the video I wanted to go to, it would go all the way back to the beginning. And I think that that had him a little bit short. And I understand. I don't think he was upset with Ms. Livingston, but I do think after he corrected the officer twice, the officer just did not get it. Corrected him about what? When I would ask a question that called for a yes or no answer, he wanted to talk about... he wanted to be non-responsive. And the judge, on at least two occasions, had to correct him, and he was upset with the officer's demeanor. But when the state says it's important to overlook their procedural forfeiture, because the courts must enforce against Jamie Schabowski her procedural forfeiture and failing to appeal the rescission decision, this to me is inconsistent. But that aside, I think it's clear that the law of the case doctrine is not applicable here. This is an argument that was made in principle in the Moore case, and the Supreme Court's already told us what to do. The Supreme Court's already told us that the collateral estoppel doctrine is the one that we apply in this type of a case. It applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on different causes of action. And they didn't talk about the law of the case there, because I've been unable to find a case that says we will not permit the relitigation of this issue on both the law of the case doctrine and collateral estoppel doctrine. They are mutually exclusive. They don't both apply. The Supreme Court's already said collateral estoppel applies in this case. These are two separate causes of action. The rescission hearing, the primary concern is the reinstatement or the lack of reinstatement of the driver's privileges for the defendant. The criminal case, and that's civil. The criminal case, there are collateral consequences in regard to the driver's license. But this is a criminal matter. We're concerned with the safety of the public. We're concerned with punitive measures. We're concerned with rehabilitation. Two entirely different matters, criminal versus civil. Civil procedure governs the petition to rescind. So clearly, the question is, does the collateral estoppel doctrine apply or does the law of the case doctrine apply? Clearly, these are different cases, so we look at collateral estoppel. And Moore set forth the policy reasons for not applying collateral estoppel. When there's been a rescission hearing, we don't apply it to the motion to quash arrest hearing. We permit a re-litigation. And it's primarily for the benefit of the state. It's not for the benefit of the defendant. This is all for the benefit of the state because we don't want them to be required to treat every summary suspension hearing as a full-blown hearing. The purpose of the statute is to make this a very perfunctory procedure. They can rely on the police report. They can call the witnesses if they wish, but they can just simply introduce the police report as they most often do in defense of their position that the suspension should not be rescinded. Let's go to the manifesto of the evidence issue. I'm looking at your brief, and I just want to make sure I didn't missee something on the DVD. You say that at one point she was barely in the left lane. I thought I saw a point at which the defendant actually drove into the left lane, oncoming traffic, before it became four lanes. Maybe I'm just not familiar with that road. I did not see that. Route 1 is north-south. This area is north-south. Two lanes northbound, two lanes southbound. I didn't see her drive into the two-lane portion where you're actually in the village. I didn't see that. It is two-lane, then it becomes four, correct? At some point it's two-lane, then it becomes four, but I thought she was always driving four lanes. In my brief, when I say she drove into the left lane, she was in the curb lane, and she drives into the other lane going in the same direction, and it's about a fifth or a fourth of her car goes into the lane that's traveling in the same direction. Then she turns on her turn signal after just a couple of seconds, and I think the judge says she did drift over and corrected that immediately. I think that's what he was trying to say. Is that a violation of the Illinois Vehicle Code? I think the judge found it was, and I can't dispute that if you're changing lanes, you've got to turn on your turn signal. He didn't find that the initial stop was inappropriate. Are you contesting that now? I am. I did not contest that in my brief. I did not contest that. So the question is, after the stop was made and the interaction of the trooper and the defendant, did that interaction lead to probable cause for the arrest? Right. So the question then being, did the trooper have probable cause based upon what he observed and knew to arrest your client for DUI? Right. What are the rules of evidence that govern the determination of what a police officer may think? Well, he can look at the totality of the circumstances, certainly. And in the totality of the circumstances, he pulls this woman over. He claims her speech is slurred, but when we look at the video, her speech is clearly not slurred. He also claimed that at some point her answers did not make sense to him, and her answers are perfectly logical and responsive. What about the PBT test? PBT test was never admitted, Your Honor. Well, now that's interesting, counsel. First, why not? You objected. What's your grounds of objection? My objection was foundation. Well, that goes back to the question I asked. What are the rules of evidence that govern what a police officer may consider when he decides, based on the totality of the evidence before him, he has probable cause to make an arrest? Well, I think that if he's got a legitimate portable breath test machine approved by the state, if it's in proper working order, the only thing he said, and he's been trained on it, he didn't say he'd been trained on it. He didn't say it was in proper working order. He said it hadn't given him any trouble. He didn't say it was a machine that was approved by the Department of Health. He said nothing of this nature. So he's got to say all that, and that all has to be something he has to demonstrate before he can consider any of these results? Well, I think that he's got to have some indication. What case stands for that proposition? I don't have a case that stands for that, but I think there has to be some indication that what the officer is relying on is reliable. So it's unreasonable for this officer carrying this PBT test to administer it and then consider its results? Unless he can show that it's entitled to some reliability. Counsel, didn't you put the DVD in evidence, which actually gave us that evidence? I played the DVD for the court, and on the DVD the officer holds something up that has numbers on it. Now, I'm not going to admit today that that is a legitimate portable breath test result, and that comes at the end. That is the last thing that happens before he says you're under arrest. Well, why does that matter, that it comes at the end? Because what this officer has done is he has kept this woman at this location. The first thing he does is he talks to her, he finds out she's had a fight with the boyfriend. He claims there's a strong odor of an alcoholic beverage. Of course, we can't tell that from the video. But he then, after he talks with her and finds all this out, goes back. He says to her, okay, wait a minute. I'm going to check to see if you're valid, and then we'll get you going. And he goes back to his car. Are you going to answer my question as to why it matters that it was the last thing he did? Because I think he's detained her on a fishing expedition for an unreasonably long time. And I don't think he can do that under Brownlee. So you made a motion to suppress on the grounds of unlawful detention being too long? I did raise unlawful detention, and I think the court's ruling can be sustained based on the fact that this officer goes back, he's sitting in his car, he calls in the license, he's told it's valid, and then you can hear him sigh, and we cross-examined him on this. He sighs and says DUI, because he finds out she has a prior DUI. What case stands for the proposition that in the processing a stopped driver like this, that the officer has to do the PBT or the other tests in a different order than what he did here, or Brownlee implies? Well, there's no case that says he can do any particular order, but he can't. He stopped her for an improper lane use violation, and that's all he did. He was done. He was going back. Once he found out she's valid, he should let her go. What he does instead, when he finds out she's got a prior DUI and he sighs, is then he launches into this incredible series of tests. Come on out. She stumbles. No, she didn't stumble. Nothing could be clearer than the fact that she did not stumble when she got out of that car. He then says, do these tests. Well, I have a bad back, I have heels, and I have weak ankles. And the officer, oh, I have all that too. I have problems with my ankles because of track. And he makes her do tests. If he says she flunks and she says he didn't. And then there's no showing that this number that's flashing on the screen is a legitimate indication of her blood health. I keep asking you that. At the time this is happening, is it that when the officer is supposed to say, by the way, I'm now showing this on the screen, and this is something I tested earlier, I know it to be valid, it's something I'm going to rely on? Is that how it's supposed to work? No, no, no. But at some point the court's got to be advised that it can say, gee, the officer had, in the totality of the circumstances, this test that is reliable. So that's to show a foundation. I think there's got to be a foundation. What case stands for that, Counselor? Would we be, again, the first to so hope? I don't think there's any case that says that the officer can testify that there was a breath test and I relied on it and it was this without showing that that's reliable. So the officer's testimony is I gave her the PBT, if I'm carrying with me, and I got a .14, that's not something the officer can reasonably consider. That's the standard, isn't it? But the officer didn't testify to that in this case. He didn't say I got a .14. What did he say? He said I gave the portable breath test. Well, you stopped him. I objected, and the state could so easily. So you objected on the grounds that this is not something the officer could reasonably have considered in deciding whether to make an arrest. I objected to the fact that the state had not shown there was a reasonable base, reasonable foundation for the court to find he could rely on because they hadn't laid a foundation. And we're going to have to have a foundation for the PBT. I think that the officer can't just say without showing there's some indicia of reliability. Just as he's got to say there's some indicia of the reliability for these field sobriety tests. He testified that. Well, if I follow the logic of your argument, and we are going to require licensure and testing of PBT machines, certifications, just like breath machines at the courthouse or the jail, and you're going to have to keep a log and all the other indicia of science kind of stuff, that yes, we certify that this is in good working order. If we do that, do we then not turn PBTs into prima facie evidence of guilt or innocence as opposed to indicia of probable cause? I apologize, Your Honor. That is not my suggestion. I don't think the foundation for a PBT has to be the same as for the breath test, although the machine itself is in many instances the same machine without a printer. It's so small now. But realistically, I mean, you're saying, well, you know, there ought to be some certification that it's in good working order. Well, I doubt that you would take the word of this state trooper that, oh, yeah, I blew into it and got a zero, so I know it's working. I mean, you're going to require more than that in terms of certification that the machine works. I'm not suggesting extensive foundation, but, you know, they have in the bars, they have the machines you can put a dollar in and blow into to see if you're drunk. I think we need more than that. What about hearsays? Hearsay admissible for a cop's consideration? Absolutely. Why? Hearsay is admissible because we're talking about probable cause. We're talking about the totality of the circumstances. Does he have a right to rely on this? If hearsay is admissible, though, can we go with triple hearsay? There has to be some measure of reliability. It depends on the addition of reliability. Isn't the question whether it was reasonable for the officer to rely upon it? Yes, and we don't know. Viewed from his eyes? And we don't know that because he didn't tell us this is a reliable machine. How about if we know that in a given case, a cop comes to the scene and there is the wife of the suspect who makes statements to the cop about incriminating the suspect about things that he had said to her, which we know as lawyers would not be admissible because of the husband-wife privilege. Can the officer consider it? I would think he could. Why? We know it's not admissible at trial. It's not going to be admissible at trial because the test is not admissibility at trial. Okay, what is the test? The test would be whether, under the totality of the circumstances, this reliable information rose to the level of probable cause. What is there before the court or us to lead us to think that to the extent this state trooper relied upon the portable breath test he carried and he administered and its results, that it was unreasonable for him to do so? And again, we would submit we don't have the results and evidence because when I objected, the court sustained the objection and the state did not proceed with the minimum questioning that would have been necessary to establish this result is reliable. This is something I should be entitled to rely on. They didn't ask those simple questions. Are we supposed to rely upon the judge's finding and the basic record or are we able to view the video or the DVD ourselves and decide whether Bordoli was right? I think this court should be entitled to review the video because there was a stipulation and counsel indicated this was the fourth time he had said, I wish the state's attorney had done something. It's the first time I'm saying that. I wish I had just said I moved to introduce the video. Well, they stipulated. You stipulated. But there's a stipulation. And so should this court look and say, was Judge Bordoli's decision against the manifest weight of the evidence? That's part of the record. I certainly think so. Why doesn't the Supreme Court agree with you? I'm unaware of them not agreeing. I mean, that's part of the evidence is his decision. Are his findings against the manifest weight? You have to look at the evidence to see. Well, if it's a credibility decision. Well, if it's a credibility decision, it's entitled to deference and it's entitled to great weight unless it's against the manifest weight. Why isn't he just second-guessing the cop? We looked at the tape. It seemed to me her view of the film test wasn't very good. He's made a finding this officer is not credible. About what? He resolved all questions of credibility other than the question about weaving over the line that one time in favor of the defendant. Well? About everything. But we've got a DVD. Why do we need to worry about credibility of anybody? A DVD. The odor of alcohol doesn't show up on the DVD. So he should disbelieve. Did he say, I don't believe the cop as far as the odor of alcohol? He did not say that. He disagrees with the tripper's assessment with regard to the heel-to-toe test, right? He does. I think he's wrong. I think he's second-guessing the cop, and I think it's faceless. Why should I have to adhere to what Judge Borbley said? I don't understand it, counsel. It seems to me like you had some Svengali effect upon him with regard to that and the whole bogus foundation argument with regard to the PBT, which I don't understand either. He bought that too. How did you manage to do that? I think he wanted some testimony that this is something the officer can rely on instead of the officer just saying, here's the result of the test. Well, tell us about the test. What does that test mean? The court has absolutely no basis. 0.14 in PBT, what does that mean? I don't think the court can take judicial notice of what that means. It's got to be told what that means. It has to be some foundation. Thank you. Thank you, counsel. I'll take this matter under advice. Oh, I'm sorry. Rebuttal? Did you want to say something else? I would like to, Your Honor. We're just so used to you not having the last word. Yes. Well, again, you have your 3 o'clock argument coming up. No, we don't. This is it. This is the last shot for the day. Go ahead. Fire away. So why isn't this admissible, the DVD? You and your opposing counsel stipulated it. Oh, okay. Counsel's point, as I understand it, is that the officer should have said 0.149. And because he was not allowed to say it. You objected to the DVD. You objected that the DVD hadn't been admitted, I thought. That is, yes, yes. How can you say that when you stipulated to it? Because I think the stipulation is, and I hope I'm using the proper word here, incomplete. In what way? It said it did not include a statement that the officer found that it accurately represented what he had done. Let me respond to three points in counsel's argument, and then, of course, we'll come back. Is there any reason that we're prohibited from considering the 0.19 that she blew later as corroborative of the reliability of the PBT test? As corroborative of? The reliability of the PBT test. Ah. I would like to say there is no reason. I think there is. Well, I would appreciate you telling me that. I think that reason is the same as the state cannot use discovery of cocaine on an individual to prove that he had probable cause to search that individual. That's a different question. I agree. Mr. Ryan has attacked the reliability of the PBT. Okay. Because nobody ever testified that it was reliable either per se or that particular machine. To answer that question, as I understand it, is yes, the 0.19 should be considered by the court in determining whether the officer had probable cause based on the 0.149. The 0.419 clearly was an hour, hour and a half before the 0.190. So any inaccuracy in the 0.149 tilts in favor of the driver who has been stopped and asked to submit. But if there must be only oral testimony on the 0.419, then the whole DVD is out. Because that is visual evidence supporting or refuting probable cause. And if there must be testimony, then there should only have been the testimony of the trooper. That's clearly not the law. Let me suggest two more points. Somewhere, I believe, at the conclusion of the motion to reconsider, the trial court thought that the defendant had swerved left across the line in response to the state trooper's lights. In looking at the DVD, I do not see the overhead flashing light image, reflected image, come on until after the trooper has turned left behind the defendant. This would be roughly at 8, I'm sorry, at 328 on the DVD and the squad car spotlight comes on at 331. Now, what we see in the DVD, the images we see. On page 18 of her brief, the defendant refers to a movement of her vehicle that occurs at 224 on the tape and involves the defendant's vehicle being partially over the dividing line between the two northbound lanes for approximately three seconds. Since she was headed south, if in fact she was between the two northbound dividing lines, the trooper should have stopped her then and there because she was driving into oncoming traffic. The question that I asked Mr. Ryan about what I thought I saw, where I thought I saw her whole vehicle move into the oncoming traffic. Had the road already become four lane at that point? I believe the entire video is on the four lane segment. I don't recall. Mr. Ryan said no, it starts on the two lane. The notes I have, I'm sorry. I asked Mr. Ryan, did you say that Mr. Ryan? I thought it was on a four lane road. Really? I thought that's what I, that's my memory. And again, your honors, you have the video. Is that the highway that runs through Danville from the interstate? It's all highway one. It goes down by the park, the river, and then back up through town? If you went north off the interstate, you would go to Danville. This is south of the interstate. Georgetown? West. West, okay. Thank you. Thank you, your honors.